Next on our calendar is D'Addario v. Kennedy. D'Addario v. Kennedy May it please this Honorable Court. Good morning, Your Honors. My name is Dean Armstrong. How likely is that to Dean Armstrong's? I represent the Plaintiff Appellant, Virginia D'Addario. Pleasure to be here today. Your Honors, this appeal involves the District Court's erroneous dismissal of Plaintiff's RICO claims at the pleading stage, while I fully realize and appreciate that many civil RICO cases, if not most, should never have been filed as a RICO case in the first instance. The facts of this totally outrageous case, like the facts recently faced by this Court in the King v. Wang case and previously in the Bingham v. Zold case, the facts of this totally outrageous case fit squarely within the ambit of not only Section 1962C of RICO, but also within the express language of Section 1962B as well, which prohibits a pattern of blacketeering activity, a pattern of wrongful conduct, to acquire an interest in or maintain control over the affairs of an enterprise, and here the enterprise for the 1962B claim is the probate estate of Virginia D'Addario's father, F. Francis D'Addario. Let me interrupt you for just a second to ask. I understand that there's a Connecticut action that's been filed and has stayed pending disposition of this. Is that correct? Yes, Your Honor, that is correct. I made that decision out of an abundance of caution. My client, Virginia D'Addario, is 71 years old. Out of an abundance of caution, I filed that suit. There's a three-year statute of limitations for Connecticut State Court causes of action. It's an occurrence statute of limitations. I made that decision out of an abundance of caution shortly after the District Court dismissed this case. We voluntarily stated, but as this Court pointed out in the GICC case, the mere fact that there's a State remedy does not preclude a Federal RICO cause of action. Your Honor, you're exactly correct. The State remedy, the cause of action that you plead there also would provide treble damages. Is that correct? I think under the Connecticut theft statute? Under the Connecticut theft statute, yes, it would, Your Honor. I do not believe it is as effective as the Federal RICO statute, primarily because, Your Honor, we are taking immediately upon the occurrence of those events, some of which went back many, many years prior. Notwithstanding your recent, relatively recent discovery of them when the documents were unsealed. Is that right? Unfortunately, Your Honor, under Connecticut State law, and I know this is a Federal court, under Connecticut State law, it's particularly strict. It is an occurrence statute. It's not a discovery statute of limitations. But yes, Your Honor, and please note, we voluntarily stated that, and we have no intention, absolutely none, of duplicative proceedings. I know the Federal courts are incredibly busy. No intention of duplicative proceedings. In light of the fact that my client, Virginia D'Addario, 71 years young, I made the decision. If I made the wrong decision, I accept responsibility. Please go ahead and address the RICO actions. Okay. Here the district court erred in dismissing Plaintiff's 1962B claims at the pleading stage by imposing, in essence, and I didn't put this in the brief, but looking at it afterwards, by imposing, in essence, a mutually exclusive injury requirement. According to the district court's decision, I think the district court erroneously construed this court's decision in discount. According to the district court's decision, the acquisition or maintenance injury under a 1962B action must be totally separate, distinct, and different than the injuries which otherwise flowed from the underlying predicate acts. And, Your Honors, this court in the- I thought she said that it needed to be something more than simply the predicate acts, the effects of the predicate acts. There needs to be an acquisition and maintenance injury, and that's what discount held. It was somewhat different, that it was something, some plus. Can you, so let's not talk about whether they're mutually exclusive just yet. What other than the predicate acts would constitute a maintenance and acquisition injury? If I could, Judge, and once again, I will answer that question, page 36, a distinct acquisition injury other than, this is what the district court ruled on page 36, other than injuries which otherwise flowed from the commission that only predicate acts. But to answer the court's question, they're not exactly the same. What we have here under the 1962B claim is an acquisition or maintenance injury which not only flows from the predicate acts, but also flows from the underlying wrongful conduct such as this Red Knot Forbearance Agreement. Yeah, isn't your argument in simple terms that the maintenance injury is that it allows Mr. Daddario to remain in control of the estate and thus to continue to perpetrate actions of the sort that the predicate acts, in your view, already have done? Am I oversimplifying? No, you're not, Your Honor. I mean, when you take a look at the big picture, the 1962B action does provide that the Red Knot Forbearance Agreement allowed him to, remember this clause in the Red Knot Forbearance Agreement, the Executor for Life Clause, which is, you know, amazing because the underlying banks originally filed a motion to remove the executors, Red Knot comes in, we believe in conspiracy with David Daddario, they put this clause in there that says if the executor is ever removed, they have the right to foreclose on all the collateral. So that Forbearance Agreement did cause and did permit David Daddario to stay in control of the estate and prolong the ability of David Daddario to continue to plunder, pillage and loot the assets of the estate, which eventually led to the estate being insolvent. My client and her mother's estate . . . You're involved in the administration of a probate estate in Connecticut. You can apply to the probate court, you can apply to the Superior Court to surcharge the trustee, to terminate the trustee, to remove the trustee. What is a recollection? Your Honor, the probate court does not provide an effective remedy. Under Payne v. Gaynor, the . . . They go to the Superior Court. You can't file a new action to the Superior Court, Your Honor. You can appeal. You can appeal to the Superior Court, but the probate . . . the Superior Court then sits, Your Honor, as a probate court without the ability to assess a damage action. The second thing, Your Honor, on a surcharge action . . . You'd like us to interfere with the ongoing probate estate. Not at all, Judge. Not at all. A surcharge action, Judge, basically, since the Connecticut probate courts do not have a jurisdiction toward monetary damages, a surcharge action is simply an offset action. If an executor comes in and wants compensation for being an executor, the probate court does have the power to surcharge, but not the power to assess a monetary judgment. So if the trustee has wasted money or taken money, there's no power to get it back? There's no powers to get it back, Your Honor, in the probate court. That is absolutely correct. Where do you go? The Superior Court? You can't file an independent action in the Superior Court. You can also file an action here in the District Court under the RICO statute. Very briefly on the 1962 C claims . . . How do you acquire an estate? You acquire an interest in the assets of the estate . . . You have a beneficiary. Right. You have a fiduciary, court-appointed. Right. So how do you acquire an interest in the estate? We believe, Your Honor, that David D'Addario, in conjunction with the other defendants, acquired interest in . . . He was appointed. Right, but he was acquired . . . Do you want us to second-guess the appointment? No, not at all, Your Honor. Is that what you're asking us to do? I beg your pardon? Is that what you're asking us to do? Not at all, Your Honor. Not at all. They acquired . . . You want us to terminate him? I do not want you to terminate him, Your Honor. I'd like . . . You just want money. You just want money. You want money damages. That's what this is about. You know what, Judge? I mean, this case has gone on forever. Virginia D'Addario, I believe, is entitled to a redeeming . . . There's nothing wrong with wanting money. I'm not saying . . . Well . . . I'm not . . . in an accusatory way, but the damages . . . what you're asking for in this case is not equitable relief duplicating what the probate court might do. You just want money. You want money damages. That's what the suit is asking for, right? I mean . . . The suit is asking for that, Judge, but, Your Honor, beyond that, though, Virginia D'Addario wants to bring honor to her father's will. David D'Addario . . . I can't give honor to somebody's will. I'm not accusing you of anything. I just want to understand. Am I wrong that the relief requested here in the RICO action is a cash award? That's 100 percent correct, Your Honor. And that's 100 percent of what you're asking for. Maybe your client has totally philanthropic motives and wants . . . I don't care about that. I'm just trying to find out what it is that you want. Now, Judge Hellerstein asked, do you want us to remove the trustee or the executor? And you say the answer is no. I want dollars. I want dollars. Virginia D'Addario, and for her mother, is a state that would like dollars. Thank you very much. Please take a couple more minutes. I'd like to hear your thoughts about 1962C. Okay. If I could, just procedurally, and once again, I'm not certain if this is raised in the brief, so I bring matters . . . I know you've all read the briefs very carefully. Bring this matter to your attention, and I'm certain the Honorable Counsel for Appalease would agree. Procedurally, what happened here, Judge, was that the pre-motion conference, rather than have the plaintiffs file an amended complaint, the district court allowed the plaintiffs to file an amended RICO case statement with the understanding that the allegations in the amended RICO case statement would be the same as set forth in an amended complaint. What the district court did then, Your Honors, was not construe the allegations in the amended RICO case statement in a light most favorable to the plaintiffs, but rather narrowly construed them. The defendants, the appellants talk . . . the Appalease talk about this hub-and-spoke kind of arrangement for a conspiracy. This is not a hub-and-spoke conspiracy kind of arrangement with David D'Addario at the hub. In light of the Supreme Court decision in Boyle, if the court could please think more of a Venn diagram. If you look at the six separate schemes involved in this suit, look at the Venn diagram of the overlap in light of the Boyle decision, there's substantial overlap with . . . She asked you about 1962C. Yes, 1962C, that's the association in fact enterprise cause of action. And what the district court did was dismiss the 1962C action based on an alleged failure to plead an association in fact enterprise, which is what the Supreme Court addressed in the Boyle decision. So I did try it, Your Honor. Maybe I didn't effectively answer it. But the complaint is the complaint. The court can read it just like the district court can. The district court, we believe, Your Honor, failed to construe the allegations in a light most favorable to the plaintiff's appellant. Your main argument on 1962 is that it's an adequately pled association in fact enterprise. Yes, I don't believe there's any disputed issue of law on that one, Your Honor. It is simply construing the allegations in a light most favorable to the plaintiff. All right. Well, you've reserved a few minutes on rebuttal.  Thank you, Your Honors. Good morning. May it please the court. My name is Alfred Pavlis and I represent the appellees David Daddario, Mary Lou Daddario, Nicholas Vitti, and Silvernot LLC. If it's agreeable to the court, my co-counsel and I have split up our time. I will be addressing the issues raised in our brief that go to rightness and statutory standing and Mr. Bouchock will be addressing the RICO pleading deficiencies. Just briefly, Your Honor, on the rightness question, the authorities are set forth in our brief and the lower court's decision. One point I would highlight is in addition to the superior court action that's available, we pointed out, we describe in our brief all the probate court remedies that are available and I think this case is, in fact, stronger than the prior cases in the Second Circuit. Here the probate judge has expressly stated that he's going to hear out Mr. Daddario. Once the final accounting is filed, he said, I will hear you out on your claims of executor or misconduct and he said in his ruling, which is in the appendix, that if any wrongdoing has occurred, I will surcharge the executors and surcharging is the ability, since he has jurisdiction over the executors, to charge them with returning to the estate any amounts of money that were removed, so that would- Is there any limit on the amount of surcharge that the probate court can impose? Not that I'm aware of. The probate judge has jurisdiction over the executor and the estate and if any funds have been removed, my understanding is the probate court can surcharge the executors for the entire amount of the alleged lost debt. Some of these losses occurred quite some time ago, according to the allegations in the complaint. Does the surcharge take into account interest and loss to the value of money over that 20 year period? That I don't know specifically, Your Honor, but the court does have broad equitable remedies. And I believe it has jurisdiction over the funds and the executor, so there may not be any limits on that. But recent amendments to the probate statute said that the intent was to provide the probate court with the same powers as the superior court when it comes to issues involving the estate and the executors. Nonetheless, I mean, so many years have passed. So many years have passed, and Judge Young, I believe, said that if the estate were not closed, this was now several years ago, he would consider resort to the probate court futile. I wonder to myself whether that's a finding that, or a comment that binds us in any way. Because it's a pretty remarkable demonstration of lack of supervision over this estate, according to the allegations, and just looking at the mere passage of time. What's your comment on that? I don't believe that's binding at all. That was not based on any sort of factual hearing. The exhibits attached to a plaintiff's own complaint show that the probate court is supervising the estate actively. Once the estate reached, in our brief, we go through a lot of the reasons that's caused this complicated and large estate to be open so long. One of them is environmental issues, another one was the IRS tax lien. That was recently settled. The IRS has been paid off. The probate judges issued an order directing the executors to now proceed with the sale of assets so that the estate can be closed. The executors are attempting to do that. A number of these properties are not owned 100% by the estate. They're owned by other parties as well, including, for example, one of the trusts. That may all be well and true, and suggest that this estate could continue for many, many years with the same sorts of problems. When I look at the allegations with respect to Red Knot, they're quite extraordinary. If those allegations are taken as true, that's an extraordinarily blatant fraud. And you're suggesting basically that we just sit here and wait for some indefinite future date when the estate closes and maybe the probate court will do something about it if that's true? And why isn't this something that ought to be attended to directly in a damages action? Well, I think in the record before you, I think there's a number of facts that show that the probate process in Connecticut is not futile. I think, as Judge Arterton said in her decisions, there's no basis to assume that the probate court in Connecticut is not exercising its best efforts. And where, I mean, the rightness issue has to do with the damages. It sounds like you're almost making into a kind of exhaustion of remedies requirement, that there needs to be an exhaustion of remedies before a RICO suit has been filed. Exhaustion of state court remedies, I've never heard of such a requirement. It's not really an exhaustion of remedies argument. It's based on the line of cases from this court that your damages do not meet the requirement of the RICO statute to be certain. And as opposed to speculative, and when remedies such as the bankruptcy process or the probate process that can eliminate the lost debt are available and have not been finished, you don't have a certain and definite damages that meet the requirements of the RICO statute. That argument does not apply to the collection damages. Is that right? Well, they're not, that's a different- The collection damages- That have already been expended. Yes, but the law on collection expenses I think is much less than the law on lost debt damages. And I think in some ways this court would be working with an open slate in ruling on the collection expenses. Why should we say that the collection, or maybe you have a different argument as to why we shouldn't deal with that. But that's not right. Some of those expenses have already been liquidated. We have an amount, we know how much has been expended. There may be more in the future, but that's often the case in any kind of damages action. That there are accumulated damages, there may be more damages in the future, and we don't necessarily say you can't sue until all the damage works itself out into the future, right? Yeah, as a practical matter, it will lead to piecemeal litigation. Because you have ongoing collection efforts still occurring in the probate court and the superior court. And then you run the risk that you have the federal court in a RICO action. If it goes ahead of the actions in the state court, entering an award on certain damages, there may be apportionment issues because there's other beneficiaries of the estate and accreditors of the estate. So we think for some of the same reasons that the lost debt injury is not right, that the collection expenses are not right as well. Just in conclusion, I would point out- Argument that our taking jurisdiction to this case under RICO would interfere with the ongoing administration of the probate estate. I do, and one very important respect is that, and this is their attempt to try to get the case into federal court through a RICO action, is their allegation that the estate is insolvent. If the case were to go forward in federal court as a RICO action, and that factual issue would have to be litigated, that would interfere with the probate process because the probate judge under Connecticut law is entrusted with making the finding of insolvency. There's been no finding of it- What remedies are there if the probate judge is just so slow in this that the years and the years go by? Generations succeed generations. The same remedies that they've exercised over the course of the estate, which is they can appeal to the superior court. They can appeal to the appellate court in Connecticut. Essentially, they're asking you to find that the entire- Even though there may not be finality? They have exercised those rights and remedies, and effectively, you'd have to find that the entire state court system in Connecticut, including the reviewing courts, the superior court, and the appellate court, and the supreme court, are futile. But the management of the states is not a categorical exclusion from the purview of RICO, right? There have been RICO civil actions premised on gross mismanagement and fraudulent actions in connection with the administration of an estate. Isn't that right? Yes, and this leads to the statutory standing issue, which I wanted to note, which is one of our alternative grounds. In the event the court finds that the RICO pleading is sufficient and disagrees with Judge Arterton, we do think the court should look de novo at the issue of statutory standing and whether they have pled proximate causation. A number of courts and other circuits have found that, like this case where a beneficiary is bringing a claim under RICO that the injured party that suffers the direct harm is the estate. And that the harm to the beneficiary is derivative. That sort of conclusion or holding is consistent with the holdings in this court, where a shareholder attempts to bring a RICO action and the harms to the corporation as a whole. This court has found that in that case, the party directly injured is the corporation and the shareholder does not have standing to bring the RICO action. And we think those same principles and reasoning should apply in this context. The probated state should be the beneficiary of any assessment of damages. Yes, because there's- Whether it's through the form of surcharge or the form of an injury to business or property. Yes, because there are a few creditors remaining, there are other beneficiaries, and so there would be apportionment of damages issues, so since- Is Virginia D'Addario, though, potentially at risk for any shortfall in the estate if they're creditors of the estate? As a beneficiary, does she have some exposure? I'm not sure I understand the question. It would depend on eventually- The estate has been engaged in multiple real estate ventures. And to the extent there is, the assets are insufficient to satisfy the liabilities of the estate, is she and her mother's estate as beneficiaries of the ongoing estate that David is administering, does she have some exposure? Well, I guess there's always- Do you understand what I'm saying? Yes, yes, I understand the question now, Your Honor. The most recent accounting we filed shows that the estate has net assets based on 1986 values to the tune of $11 million. There's always- Based on 1986? Yes, the date of death valuation. And all these asset sales that have occurred since then have been for much higher values and prices, of course. But to answer your question, of course, there's always a possibility if there's a market crash tomorrow, if the real estate properties go to zero and the assets are worth zero, the creditors, the liabilities would exceed the assets. Why don't we hear from your colleague on the RICO clauses of action, please? Good morning, may it please the court. Nathan Buchok on behalf of the defendant, appellees Gregory Garvey and Red Knot Acquisitions. As we did in our papers, I'll address the court on the substantive RICO elements. To begin with, Judge Arderton correctly recognized that the conduct alleged in the amended complaint is not conduct that is within the scope of the RICO statute. Regarding the plaintiff's 1962B claim, Judge Arderton correctly interpreted the law to recognize that a plaintiff must allege an acquisition and maintenance injury that is distinct, meaning somehow different from the injury allegedly caused by the predicate acts. The district court's- What might that look like, according to you? Could you give me an example of what would be a maintenance, not an acquisition, but a maintenance injury? Certainly, Judge Lynch. This is a hypothetical from a case that we did cite in the district court, but we did not cite in our papers here. But the Jacobson case, which is 691F2D110, was essentially a loan sharking case, where a loan shark engaged in the predicate acts of loan sharking to a business, and the business was injured through those acts of loan sharking. But eventually, through those acts of loan sharking, the loan shark himself was able to take control of the business. That's an acquisition injury. But what about a situation like this, where the defendant, who is alleged to have violated 1962B, is already in control of the enterprise, legally, legitimately, but maintains his position through a pattern of predicate frauds? What would a separate injury look like, other than what is alleged here, which is a fraud, a pattern of fraud, has been used to secure the executor's position. Thus enabling the executor to continue to commit the kinds of frauds that the plaintiff alleges. Why is that not an injury that is distinct from the dollar cost of any particular fraud? Well, I think that we have to look at the allegations in the amended complaint here, and here, and the amended RICO statement. And here, the allegations of the injury are verbatim exactly the same for the acquisition of control and the predicate acts. And if you look at the facts of the Disken case. Well, what about the Red Knot, what about the Red Knot affair? The argument, the allegation here is that Mr. David has a $48 million debt of the estates by paying $4.7 million. He declined to do that, and then according to the complaint, set up a sham company with a friend that bought the debt for $4.7 million. Then has a $48 million debt that is used against the estate with the stipulation that if the executor, David, is ever removed, then the $48 million debt, which could have been canceled for $4.7 million, that was actually spent indirectly by David, is going to fall on the estate. And that's a pretty extraordinary thing to do, if that's true. It may be all a pack of lies. We don't know that at this stage. That's the allegation in the complaint. Now, why isn't that the use of a set of wire frauds, presumably can be alleged out of this, to maintain the executor in a position that is impregnable and thus enable the perpetration of more of the kind of things that the plaintiff says is being done? What more do you want for an injury to the estate and its beneficiaries from the maintenance of a corrupt person in control? Well, I think if you look at the allegations in the Diskin case, the allegations there were similar to the circumstance that you're describing here. There, the enterprise for the 1962 B claim was a company called Intel, which was a service provider, and the defendants, NX and Mayco, maintained control over the Intel Corporation and used Intel as a conduit through which to effectuate the predicate acts. And essentially, that's a similar allegation here, that the control of the- Wait, wait, wait, wait, wait, there's a difference between using the enterprise as a conduit for even using, doing various frauds that cause dollar damages to the estate and securing one's position. There's something distinctive about securing the position through that that puts the person in a position to do more harm. Now that may not be in itself something that's easily reducible to some kind of dollar figure, but I'm not sure what it means to say, and I'm still not sure what would be the dollar loss. How is there ever something that the maintenance of a corrupt person in control of an enterprise causes harm other than the ability to then extract more money out of the enterprise? What could there be? Well, I think it's also important to note in this case that the, while the Red Knot Forbearance Agreement, which is alleged as a predicate act, the plaintiff claims held Mr. D'Addario staying in control. The reality is Mr. D'Addario was an executor of the estate, and by that law would remain as an executor, which he was before any allegations of- Yeah, but of course that's an argument that the fraud did not maintain him in his position, and therefore it is not factually a 1962B claim. Because all the fraud that he could ever commit, including something that guarantees him in the way that this would have a causative effect of maintaining control, that's that argument. Right, I mean, I think certainly we could engage in discussion as what types of activities may or may not establish distinct injuries. But I think ultimately it's important to look at what the allegations are in the amended complaint. And the plaintiff has let, as we quoted in our brief, and as Judge Arterton referenced in her opinions, it is verbatim the identical injury that is alleged to have been caused by the acquisition of maintenance or control on the enterprise. And it's the exact same injury that was allegedly caused by the predicate acts here. So again, to the extent the plaintiff engages in some discussion of what degrees of difference would be appropriate, it's just not necessary to engage in that analysis here. Just if I briefly touch on the 1960s- What were the damages to her business or property? From the predicate acts? From anything? Well, she- Was she damaged, allegedly? Well, allegedly she was damaged by a reduction in her interest in the assets of the probate estate, but I will certainly- A beneficiary, a potential beneficiary income. Correct. Was curtailed. Correct. In amounts that won't be known until it's over. That's correct. I believe I would defer. Does that constitute an injury to business or property? That's not an issue that we had addressed in our briefs, but I would submit that there is certainly a question as to whether or not that's a compensable injury. One's expectation in a beneficial interest in a probate estate on the claim that it's curtailed constitute an injury to business or property. I'm sorry, would it constitute an injury to business or property? Well, it's an injury to a future interest, so it's not business or property that she currently has. So we would submit that it would not. Again, there may be an issue more appropriate for Mr. Powell. Well, would you say that's another way of stating the ripeness argument that you're making? I'm always a little hesitant about these judicially created notions, but what you're calling ripeness or statutory standing, it seems to me, is essentially the kind of argument that Judge Hellerstein is setting forth, that the statutory language link of that argument is that there has not been caused an injury to business or property because there is no injury yet, in effect, that could be so described. There's only an injury to the estate, and somewhere down the road that might harm the plaintiff. But as of yet, I think that's the kind of argument you're making. That's correct, I agree with that. I also have a question. How do you maintain an estate? How do you maintain an enterprise if you're a fiduciary in an estate? Well, I think the allegation- Refusing to settle it, not accounting for it, not rendering a timely accountings, is that a maintaining an enterprise? Well, I think the allegation is maintain a position within the enterprise. So the question is the maintenance of the position as an executor in the enterprise. Just briefly, on the 1962 C claims, Judge Arterton correctly recognized that the allegations in the complaint essentially amount to claims of a single individual, the plaintiff's brother, David D'Addario engaging in discreet acts of fraud at times with the assistance of others, but without the requisite relationship by and among the other parties. Couldn't David look at the estate as an enterprise, and it's recognized in some circumstances an individual who controls that enterprise can constitute a kind of, can violate 1962 C by his actions. This is the Don King case is what I'm thinking of. Don King being the sole shareholder and the corporation that Don King Enterprises, whatever it was, being the enterprise. And the court recognized the possibility of a 1962 violation. Why wouldn't that apply here? Well, it wouldn't apply here simply because the plaintiff is bound by the allegations in the amended complaint. And the plaintiff did not allege that type of enterprise here. They allege that the enterprise for purposes of the 1962 C claim was the quote, David D'Addario control enterprise, which consisted of David D'Addario, the named defendants, as well as other individuals. So they haven't alleged that kind of injury. In addition, by virtue of Judge Arterton's chamber's practice, we had filed a request for a pre-filing conference, noting all of the grounds that we would be raising in our motion to dismiss. The judge had a status conference, provided plaintiff counsel with an opportunity to amend both the complaint and the RICO statement, should they wish. They declined to do so, and instead opted to amend the RICO statement, which the judge agreed would be incorporated into the complaint, and they did not change the allegations. He would say that's been waived. Yes, I would, your honor. If I've adequately answered your question, I see I am over time and would rest on the breeze, unless the court has other questions. Judge Hellerstein, did you want to have a follow up? Okay, thank you very much then. Thank you. Mr. Armstrong, you have three minutes for rebuttal, please. I know you're being generous. Just working backwards, it wasn't briefed because the issue wasn't decided by the district court. Contractual rights, I believe it's the US Food Service case, and it came out of a district court decision in Connecticut. Interference with contractual rights expectancies constitutes harm to business or property. Second thing, on statutory standing proximate cause, we've met the homes factors. Now this issue was addressed by this court in the King v. Wang decision, we've met the homes factors, there's no risk of duplicate recovery. But also under federal civil procedure 17B3, the defendants admit in their briefs that the probate estate has standing. The probate estate could assert the RICO claims. Under 17B3, you look to the state law to determine the ability of a beneficiary of a probate estate to assert claims for, and on behalf of the probate estate, so either way, on the standing proximate cause issue. If the trustee can bring a RICO action, what is the argument? Does that mean anything? How does that relate to us? The David D'Addario, the executor, would never authorize a RICO action against himself and the other members of the probate estate. So under Connecticut state law- Is this a derivative action by a beneficiary in the name of the estate? I apologize if I'm not using the right term, but you look to, I believe it's a capacity issue, 17B3, the federal civil procedure. It says you look to state law to determine the capacity of a defrauded beneficiary. Isn't your bringing a derivative action on behalf of the estate against the trustee? Is that what she's doing? She has brought an individual action, but under rule 17B3, she would also have the capacity to bring an action for and on behalf of the probate estate. That's not, she hasn't done that. Correct. She's claimed an injury to her business or her property. Yes. And as well as to the estate of her mother, right? Yes, as well as to the estate of her mother. And I know I'm way over time, but- That's all right, we've got a few questions. Where does the money go if you win and we establish some large amount of damages and then treble it? It all goes to Virginia and her mother, not to other beneficiaries of the estate? Well, there's this doctrine that people should not be allowed to profit from their own wrongful conduct. So an argument- The answer is yes, isn't it? So yes. It goes to Virginia and her mother, right? It would go to Virginia and her mother's estate. The interesting thing- Are there any other beneficiaries besides David himself? Yes, David and the other co-executor, Larry D'Addario, and co-conspirator Mary Lou D'Addario. And I know it's incredibly complicated, but one of the interesting things, it's kind of sad, the way Senior Mr. D'Addario set up the estate. If a sibling dies before the probate estate closes, that sibling's interest is divided on a pro-rata basis among the living siblings. So David D'Addario, when he vowed to keep the estate open until after his sister died, there was every economic incentive for him to do that, because he would benefit from it. So there was an additional sibling, Lisa, who already has died. Lisa died, and her portion flowed over under the way that Senior Mr. D'Addario's will was set up. People generally do things for a good or bad economic motive, an economic motive. And who are the beneficiaries of the mother's estate that Virginia's purporting to represent that estate? The same children, Your Honor. Oh, the same children. Yeah, and very briefly, there's no ability, and it's kind of sad, and I'm not asking this court to rewrite Connecticut. Wait, if you're saying that there is going to be some prohibition against the other siblings sharing in the benefit then of this lawsuit, because they are participants in the wrongdoing, then the mother's estate also flows entirely. The damages that go to the mother's estate would also go to Virginia. Judge, I haven't briefed that issue, but just my general knowledge of common law, and what my dad taught me, people should not be allowed to benefit from their wrongful conduct. The answer is yes. So the answer is yes, that all the money goes to Virginia if she's successful in this lawsuit. I have not thought that through, but logically, listening to the court's logical questions, I believe that that would be so. But the others have shared in the wrongdoing. They've already, see, they were rewarded for not contesting David D'Addario's 33 year control over this estate. The mother, the senior Mr. D'Addario wanted his wife to have 50% of his estate distributed to her during her lifetime. David D'Addario kept the estate open for over 28 years. She got nothing. Thank you very much. Okay, thank you for your time. It was an honor to be here today. I really appreciate the time and attention. We will reserve decision. Thank you for your arguments. You're welcome.